UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

BETHESDA SLAVIC CHURCH,

            Plaintiff,

     v.

ASSEMBLIES OF GOD LOAN FUND,

            Defendant.

CASE NO. C12-5175BHS

ORDER TO DISBURSE
INJUNCTION BOND TO
DEFENDANTS

       This matter comes before the Court on Defendants Assembly of God Loan Fund

("AG Loan Fund") and Assemblies of God Financial Services Group d/b/a AG Financial

Solutions' ("AG Financial Solutions") (collectively "AG Defendants") motion for

disbursement of registry funds (Dkt. 56) and Plaintiff Bethesda Slavic Church's

("Church") motion to release injunction bond paid to clerk of court (Dkt. 57). The Court

has considered the pleadings filed in support of and in opposition to the motions and the

remainder of the file and hereby grants the AG Defendants' motion and denies the

Church's motion for the reasons stated herein.

ORDER - 1

# I. PROCEDURAL HISTORY

On  February 22, 2012, the Church filed a verified complaint in the Superior Court for the State of Washington in and for Clark County against the AG Defendants, Fidelity National Title Insurance Company ("Fidelity"), and Does 1-20 ("Defendants").  Dkt. 1, ¶ 1.  The Church requested declaratory and injunctive relief, quiet title, and asserts five causes of action: (1) violations of the Washington Consumer Protection Act, RCW Chapter 19.86); (2) common law fraud; (3) aiding and abetting; (4) violations of the Washington Escrow Agent Registration Act, RCW Chapter 18.44; and (5) slander of title. Dkt. 1-1 ("Complaint").

The Church also filed an ex parte motion for temporary restraining order to enjoin a Trustee's Sale that was scheduled for February 24, 2012.  *Id.* at 53.The Church asserts that the state court granted the temporary restraining order. Dkt. 12.

On February 29, 2012, the AG Defendants removed the matter to this Court.  Dkt. 1.

On March 12, 2012, the Church filed with this Court an emergency motion for continued enforcement of the temporary restraining order and for a preliminary injunction.  Dkt. 12.  On March 13, 2012, the Court set a hearing for the emergency motion.  Dkt. 15.  On March 14, 2012, counsel for the Church informed the Court that the emergency motion was withdrawn.  Dkt. 16.  The Court struck the hearing, noted the preliminary injunction for consideration on the Court's April 6, 2012 calendar, and set the preliminary injunction for hearing on April 10, 2012.  *Id.*  On April 10, 2012, this Court entered a preliminary injunction because the AG Defendants, at the very least, did

not comply with the requirements of the Washington Deed of Trust Act ("DTA") set forth in RCW 61.24.130(3).  Dkt. 33 at 5.  In accordance with the DTA, this Court required the Church to make periodic payments into the Court registry.  *Id.* at 5-6.  The preliminary injunction remained in force until it automatically dissolved on May 12, 2012.  Dkt. 40 at 3.

On December 21, 2012, the AG Defendants filed a motion for disbursement of registry funds.  Dkt. 56.  On January 09, 2013, the Church responded.  Dkt. 59.  Additionally, on December 26, 2012, the Church filed a motion to release injunction bond paid to clerk of court.  Dkt. 57.  On January 8, 2013, AG Defendants responded.  Dkt. 58.

## II. FACTUAL BACKGROUND

The Church is a non-profit corporation registered in the state of Washington.  Dkt. 1-1, ¶ 12.  AG Loan Fund is a non-profit Section 501(c)(3) company that provides loans in connection with church-related projects.  Dkt. 25, ¶ 3.  AG Loan Fund has approximately $1.1 billion in assets, much of which represents the retirement savings of various ministers and missionaries at certain Assemblies of God churches.  *Id.*, ¶ 4.  AG Financial Solutions is a 501(c)(3) company which manages loans of AG Loan Funds pursuant to a management agreement.  *Id.*, ¶ 6.

On January 28, 2008, the Church executed an Adjustable Rate Secured Note in the principal amount of $4,002,000 ("Note") and a Deed of Trust, Assignment of Leases and Rents and Security Agreement ("Deed of Trust") with respect to a certain property at 11910 154th Street in Brush Prairie, Washington (the "Property").  Dkt. 29, ¶ 7.  The

Deed of Trust gave AG Loan Fund the right to foreclose if the Church defaulted on the 2008 Note.  Dkt. 1-1 at 23.  AG Loan Fund caused the Deed of Trust to be recorded in Clark County, Washington.  Dkt. 25, ¶ 11.  The 2008 Note was a refinance of the Church's earlier note in 2006 with AG Loan Fund.  *Id.*, ¶ 10.  The proceeds of the 2006 Note were used by the Church to build a church on the Property.  *Id.*  The Church obtained the 2008 Note to pay for cost overruns that arose during the construction process.  *Id.*, ¶ 11.  AG Loan Fund made a series of advances on the 2008 Note over the following two years as construction was completed.  *Id.*

The 2008 Note was funded with assets of AG Loan Fund, and the Note has never been assigned.  *Id.*, ¶ 14.  AG Loan Fund is, and has always been, the entity that is owed all amounts due under the 2008 Note and is and has always been the possessor, owner, and holder of the 2008 Note.  Dkt. 29, ¶ 7.  AG Loan Fund has had the ability to cancel the 2008 Note if the 2008 Note were paid in full.  Dkt. 25, ¶ 15.  AG Loan Fund has never received any payment on the 2008 Note from any party other than the Church.  Dkt. 29, ¶ 10.  After the 2008 Note was issued, it was modified several times when the Church and AG Loan Fund entered into three allonges which became part of the 2008 Note.  Dkt. 25, ¶ 13, Ex. 4.

After the 2008 Note was funded, the Church made multiple payments to AG Loan Fund.  *Id.*, ¶ 17.  The Church then made a series of incomplete payments and failed to make other payments due under the 2008 Note.  Dkt. 29, ¶ 11.  As a result, on or about July 1, 2011, a Notice of Default was issued to the Church.  *Id.*  On or about September

1    14, 2011, foreclosure proceedings began.  *Id.*  The foreclosure sale was continued several

2    times.  *Id.*

3            On April 10, 2012, this Court entered an order granting the Church's motion for a

4    preliminary injunction to restrain the foreclosure sale which was scheduled for April 13,

5    2012.  Dkt. 33 at 4.   As required by the Washington Deed of Trust Act ("DTA"), RCW

6    61.24.130(1)(a), this Court conditioned the preliminary injunction on the Church's

7    periodic payment of principal, interest, and reserves to be paid every 30 days into the

8    Court registry.  *Id.* at 5-6.  The specific amount to be paid into the Court registry was

9    $35,251.08 per month.  *Id.* at 5.  This Court further ordered that if the Church failed to

10   make its first payment on Thursday, April 12, 2012, by 4:30 PM, or any payment

11   thereafter, the preliminary injunction shall automatically dissolve.  *Id.* at 6.

12           On April 12, 2012, the Church deposited $35,251.08 into the Court registry.  Dkt.

13   56 at 2.  As a result, the preliminary injunction remained in force, and thereafter, AG

14   Loan Fund canceled its foreclosure sale.  *Id.*  The preliminary injunction automatically

15   dissolved when the Church failed to make its second payment due on May 12, 2012

16   according to this Court's order.  Dkt. 40 at 3.

17           The parties have now agreed to the dismissal of all claims in this case and

18   anticipate filing a stipulation of dismissal once these competing motions are adjudicated.

19   Dkt. 56 at 2.

20

21

22

**III. DISCUSSION**

The issue before this Court is to determine whether the funds deposited into the Court registry, along with any accrued interest, shall be disbursed to the Church or to the AG Defendants.  Each party asserts a claim to the funds.  Dkt. 56 & 57.

The Church argues that "[i]t is uncertain if this Court's order requiring the [periodic] payment was in accordance with RCW 61.24.130 or Fed. R. Civ. Pro. Rule 65(c)."  Dkt. 57 at 2.  It is abundantly clear that this Court issued its Order Granting Plaintiff's Motion for a Preliminary Injunction in accordance with and based solely on RCW 61.24.130.  Dkt. 33 at 4.  Therefore, the resolution of this motion turns on the language and interpretation of the DTA.

The DTA, RCW 61.24, was first enacted in 1965 to provide an alternative to the outdated foreclosure process.  As the Washington Supreme Court noted, the DTA should be construed to further three basic objectives.  *Plein v. Lackey*, 67 P.3d 1061, 1065, (Wash. 2003).  First, the non-judicial foreclosure process should remain efficient and inexpensive.  *Id*.  Second, the process should provide an adequate opportunity for interested parties to prevent wrongful foreclosure.  *Id*.  And third, the process should promote the stability of land titles.  *Id*.

The DTA describes the steps that must be followed to properly foreclose a debt secured by a deed of trust.  The notices of foreclosure and trustee's sale must strictly comply with the DTA requirements.  *Amresco Independence Funding, Inc. v. SPS Props., LLC,* 119 P.3d 884, 886 (Wash. Ct. App. 2005).  If these steps are satisfied then the foreclosure extinguishes the debt and transfers title to the property for the benefit of the

1    lender.  RCW 61.24.130; *In re Marriage of Kaseburg*, 108 P.3d 1278, 1285 (Wash. Ct.

2    App. 2005).  If these steps are not satisfied, then "the borrower, grantor, any guarantor, or

3    any person who has an interest in, lien, or claim of lien against the property or some part

4    thereof" may seek to restrain the trustee's sale upon a showing of proper legal or

5    equitable grounds.  RCW 61.24.130.

6         As a condition of granting the restraining order or injunction, the statute identifies

7    two types of payments to be paid by the applicant.  *Id.*  The first payment is mandatory as

8    a condition of granting the restraining order or injunction. *Id.* at (1)(a) ("The court *shall*

9    require as a condition of granting the restraining order or injunction that the applicant pay

10   to the clerk of the court the sums that would be due on the obligation secured by the deed

11   of trust...") (emphasis added).  The second payment is permissive and within the sole

12   discretion of the court. *Id.* at (1) ("In addition, the court *may* condition granting the

13   restraining order or injunction upon the giving of security by the applicant, in such form

14   and amount as the court deems proper…") (emphasis added).

15        In construing statutes, courts attempt to give effect to the plain meaning of the

16   words used by the Legislature.  *State v. Sommerville*, 760 P.2d 932, 936 (Wash. 1988).

17   Where the Legislature uses certain language in one section, and different language in

18   another section, there is different legislative intent.  *In re Swanson,* 804 P.2d 1, 4 (Wash.

19   1990).   The DTA describes the mandatory and permissive payments with clear, yet

20   distinct language, which stresses that the payments must serve different purposes.

21

22

**A.      Permissive Payment**

  With regard to the permissive payment, the Legislature's intent is clear.  This payment is to serve as "security . . . for the payment of such costs and damages, including attorneys' fees, as may be later found by the court to have been incurred or suffered by any party by reason of the restraining order or injunction."  RCW 61.24.130(1).

  The AG Defendants did not request, and this Court did not order permissive security payments be paid into the Court registry by the Church; therefore, the parties' arguments that the funds are for "costs and damages" are without merit.  Consequently, the party to which the funds will be released turns on the purpose served by the mandatory payment.

**B.      Mandatory Payment**

  The Legislature's intent is less clear with regard to the mandatory payment, but is ascertainable from the language and overarching purpose of the DTA.  While the parties repeatedly characterize the mandatory payment as "security," a close reading of the statute reveals this to be an untenable characterization.  First, the DTA specifically labels the *permissive payment* as "security" but does not similarly label the *mandatory payment* as such.  Second, the permissive payment was not intended to serve as "additional" security because the statute clearly declares that "[i]n addition" to the mandatory payment, "the court may condition granting the restraining order or injunction upon the giving of *security* . . . ."  RCW 61.24.130(1) (emphasis added).  If the Legislautre intended the permissive payment to serve as "additional security," the Legislature would have (1) labeled the mandatory payment as "security," and (2) permitted the court to

1    condition granting of the temporary injunction upon the giving of *additional* security.

2    The Legislature did neither.

3          According to the DTA, "[i]t shall be requisite to a trustees sale . . . [t]hat a default

4    has occurred in the obligation secured or a covenant of the grantor, which by the terms of

5    the deed of trust makes operative the power to sell."  RCW 61.24.030(3).  Here, the AG

6    Defendants maintain that after the 2008 Note was funded, the Church made multiple

7    payments to AG Loan Fund followed by a series of incomplete payments and eventually

8    failed to make any additional payments.  Dkt. 33 at 3-4.  On July 1, 2011, the AG

9    Defendants issued a Notice of Default to the Church and began foreclosure proceedings

10   on September 14, 2011.  *Id.* at 4.

11         If, as in this case, the Court restrains the sale based on a showing that the trustee or

12   other party has failed to strictly comply with the procedures set forth in the DTA, then the

13   Court must condition the restraint upon the collection of periodic payments of the

14   original obligation.  This Court granted the temporary injunction because the AG

15   Defendants failed to comply with the procedural requirements of the DTA, not because

16   the underlying loan obligation violated the DTA.  There is nothing in the record to

17   indicate that the Church could show the periodic payments were not due and payable

18   during the pendency of this action.  Absent any ruling on the merits as to the lawfulness

19   of the original obligation, the funds should be disbursed to the lender in exchange for the

20   borrower's additional use and enjoyment of the property.

21         This result reinforces the purposes of the DTA which is to provide an efficient and

22   inexpensive non-judicial foreclosure process.  It is clear that the Legislature's intent was

1    not to allow borrowers to retain control of the premises during a temporary restraint

2    without making payments for the continued use and enjoyment of the property, especially

3    where there is no realistic dispute as to the validity of the underlying periodic payment

4    obligation.  To allow such a result would be inequitable.  Therefore, the funds, including

5    any interest accrued, shall be disbursed to the AG Defendants.

6                                          **IV. ORDER**

7            Therefore, it is hereby **ORDERED** that AG Defendants' motion for disbursement

8    of registry funds (Dkt. 56) is **GRANTED** and that the Church's motion to release

9    injunction bond paid to clerk of court (Dkt. 57) is **DENIED.**  The Clerk is hereby

10   directed to disburse to the AG Defendants the funds paid into the Court registry by the

11   Church, including any accrued interest.

12           Dated this 31st day of January, 2013.

13

14

15                                          BENJAMIN H. SETTLE
                                            United States District Judge

16

17

18

19

20

21

22